Welcome, everybody, to the Fourth Circuit. We have four cases on our docket this morning. Before we begin, I want to welcome and thank my dear colleague, United States District Court Judge Max Cottonburn from the Western District of North Carolina for joining us this morning. Pleasure to be here. Thank you so much. First case is United States v. Salas and Ms. Bennett. Good morning, and may it please the Court. My name is Sarah Bennett on behalf of Appellant Mario Salas. Mr. Salas appeals the denial of his Rule 60b motion, meaning that the focus of this appeal is on the merits of his Rule 60b motion, not on the merits of the underlying habeas judgment. Now, this Court has asked the question of timeliness, and this is a unique case where the answer turns on a series of extraordinary circumstances starting over 20 years ago. Is the motion a 60b-4 or a 60b-6 motion? It's both, Your Honor. The motion was titled a 60b-4 motion, but the District Court correctly did not look at the title but the substance of the motion and construed it as both a b-4 motion and a b-6 motion. And we do not dispute that the b-4 motion is properly denied while we think the District Court did make an error on timeliness because a Rule 60b-4 motion cannot be held untimely. Ultimately, the judgment is not void, so this Court has other reasons to affirm the b-4 motion. So I think the focus of this appeal today is the Rule 60b-6 motion. Now, this Court has asked the question of timeliness on the 60b-6 motion. So in 1999, Mr. Salas was convicted of a drug conspiracy, and the judge, not the jury, made a finding as to the relevant drug quantity. And this mattered for Mr. Salas because it meant the difference between a maximum sentence of 20 years and a maximum of life. The judge decided this fact and sentenced Mr. Salas to life, and he has now been in prison for over 20 years. He did that, though, in part on a, I don't want to call it a concession, but at least an argument from his trial defense lawyer that the drug quantity in question was somewhere around 30 kilograms, as I remember. But there was no argument that the amount was so low that it would have made a difference later on in the way that he's now arguing the case before us. Isn't that fair? That's fair, Your Honor. The ultimate quantity the judge found was somewhere between 10 and 30 kilograms to put him within a certain guideline range. And you haven't, I guess the problem I have with this appeal in your case is that you really haven't presented any evidence to us that would call that into question. You make all these arguments about his frustration with the fact that he hasn't been heard on his claim, and I get that. I understand that. In a way, I kind of empathize with his position. But even at the very end of your reply brief, you really don't talk about the drug quantity. You focus on the underlying merits of the conspiracy conviction and whether or not the evidence was sufficient there. But that's not what this case is about. It's about drug quantity. And ultimately, why isn't this case one of harmless error, particularly when we're considering it on plain error? Yes, Your Honor. I agree that we did not focus much on the drug quantity. And the reason for that is because in the 60B context, the question is not the underlying judgment. And this Court made that holding in Burnley that the appeal from the denial of Rule 60B relief does not bring up the underlying judgment for review. But ultimately, at some point, we do have to consider, at least as your colleague suggests, the question of harm in deciding whether or not this Rule 60B motion should go back to the district court judge or whether we can decide ourselves, based on this record, whether there simply is nothing to be gained by sending it back. Yes, Your Honor. I mean, I think in the Rule 60B context, the question that you're really asking is that threshold requirement that he show a potentially meritorious claim. That's right. And I think the holding in Burnley showed that that claim needs to be something less than winning. I think we need to show guaranteed success on the Apprendi claim when it goes back to the district court. It's really just the potentially meritorious claim that he needs to show here. And this Court has also held that if there is doubt, that doubt should be resolved in the movement's favor. How can there be doubt given the concession that it was 30 kilograms? Your Honor, I would disagree that there was a concession that it was 30 kilograms. I think the trial record shows that. And it doesn't even have to be that. It just has to be something more than one kilogram, right? So on this record, I mean, how can there be any doubt about that? Correct, Your Honor. I think the important thing is not the – well, I think what you really need to look at here on the merits of the Rule 60B claim, if we get the 60B motion granted and it does go back to the district court, for the district court to look at that Apprendi claim, the court does not need to make a finding as to drug quantity again. The question there will be plain error review, as you suggest. And this Court held in promise that an Apprendi error by its nature is a plain error affecting defendant's substantial rights. So those parts of the plain error review have already been cleared the way, and we would suggest that that even may be enough to overcome a potentially meritorious claim in the 60B context. But looking further, that last step is looking at whether the evidence is overwhelming. And I think the helpful thing here is to look at some of the cases, even some of the cases cited by the government in this case. So looking at Pettigrew, for instance, Pettigrew is a case about procedural default, but the prejudice question in procedural default is similar to the overwhelming analysis in plain error review. In that case, the government presented physical evidence over the required drug quantity that was purchased by an undercover cop from the defendant. So in that case, in Pettigrew, it really does make sense that the jury could not have found anything different when faced with this physical evidence against him. That's not the case here. Here, while there was physical evidence, the record does not reveal how much that physical evidence amounted to in this case. So all you're really relying on here is the testimony of biased co-conspirators. Now, the government also cites, I think they cite three witnesses as examples. Two of those witnesses did not even know Mario Salas, and they testified to that on the stand. So I don't think it's as simple in a conspiracy case like this where you're focusing on the word of co-conspirators to reach the holding that this case was overwhelming. So putting aside for the time being the issue of harm and the defense you might raise, we kind of got you sidetracked on the timeliness issue. What's your position on the unreasonable delay issue? And if you could talk specifically about, I think, the Rule 60 motion that was not appealed and how it's not an abuse of discretion for the district court to have found that there's an unreasonable delay when you had a motion on very much the same grounds that was not appealed. How does that create abuse of discretion? Well, I think at its base, Your Honor, the district court did not even recognize that a motion was filed under Rule 60B back in 2003. When looking at timeliness in this case, all the district court really looked at was when the decision in Clay was made and when this Rule 60B motion was made and then said 15, 16 years is too long. But that simplification ignores the facts of this case that could make that motion timely. And I think that's where the abuse of discretion happens. I would argue there's also an abuse of discretion in the fact that the court did not give Mr. Salas a chance below to make a case for timeliness before dismissing it on those grounds. But to your question about the actual facts here, the facts show that Mr. Salas has diligently pursued relief over the past 20 years, but these extraordinary circumstances have kept him from having his claim heard. Well, that raises another question. So having done that, as you say, having diligently pursued relief, what is it about this most latest iteration of the motion that warrants yet another bite of the apple? I mean, you've made the point that every step of the way he's tried to make his claim, it's been rejected. You say wrongly. There may be a dispute about that. But I have trouble understanding why this most latest motion warrants a finding of extraordinary circumstance given that he's had his opportunity, he's just not been successful at every step of the way. Your Honor, I would disagree that he has had his bite of the apple. The bite of the apple he is looking for is having his apprendee claim heard, and no court has ever been willing to engage on that point. Well, no, no, no. I mean, he's presented it to the courts. In one instance, our court, I'll concede a rather summary disposition, rejected the claim. But how do you know that that claim wasn't heard other than the fact that the court didn't expressly say anything about it? If you're referring to the appeal of the habeas judgment, yes. I think we know that because if you look at the district court's ruling below, the only basis on which it denied Mr. Salas' apprendee claim was the holding in Torres, which the holding in Clay specifically overruled. So this is not a case where the district court made multiple alternative findings on why Mr. Salas' apprendee claim should be denied. This is a case where they made one holding based on Torres, and that was overruled. So I think looking at this court's case, there's no way that they could have proved it just on those grounds. So I think that is why here that's the difference, and this court has not looked at that before. Your Honor, on a similar point, the government seems to look to other reasons to affirm, and they mention their very first argument is law of the case doctrine, which just categorically does not apply here. You did mention prior panel rulings, and prior panels have looked at this case, but no prior panel has ever looked at the timeliness or the merits of a Rule 60b motion. Back to what you said a second ago, I think the district court's memorandum opinion that ultimately was affirmed by our court in the summary fashion referred to above did a little bit more than just refer to Torres. I'm at JA 93, and it looks like it talks about how our Sanders case says that apprendee can't be used in a collateral attack, and I think that was the part of the ruling below that our court then, when it addressed the issue, did so in a summary fashion. And to Judge Diaz's point, granted that there's not a lot of discussion about it, but isn't it fair to assume since that was part of the district court's opinion, that was part of our opinion, which you may disagree with, but nevertheless indicates it was considered. Your Honor, I apologize. I must have misunderstood your question. When I was referring to the decision below, I meant the decision below here in 2018, which is where the district court denied this motion based on timeliness. And in that case, they really only looked at Clay and then this motion. But my point was, back to the other issue, that earlier in the procedural history for this, the district court grappled with the issue of apprendee on issues beyond Torres, addressed the Sanders case, and made a ruling, that our opinion essentially denied the petition for appeal without a whole lot of discussion. But it does seem like your client had the opportunity to make the argument, essentially, that you're making now below. Your Honor, looking back at the Rule 60B motion from the 2003-2004 range that you're referring to, that court, that ruling was focused on whether that 60B motion was truly a successive habeas petition. And on that, it was. And I think that's where the Sanders case came into play in that opinion. So I disagree that the court really grappled with apprendee in that claim. What the court was looking to was whether Mr. Salas was trying to improperly use a 60B motion to bring a successive habeas petition. And I think they relied on Weinstock as well. And the Weinstock opinion, which was confirmed by the Supreme Court's opinion in Gonzalez, held it is a true 60B motion when the attack is on the non-merits aspect of the habeas proceeding. And that is what Mr. Salas was attacking then, and that is what he is focused on now, this non-merits aspect where the district court answered the procedural question of when his conviction became final. So I would disagree that that initial Rule 60B motion was really a look at apprendee. In that case, it was really the successive habeas petition, and Gonzalez has now shown that that decision was wrong as well, which is also one of the extraordinary circumstances, as we say, that ties back together in this case. You know, the crux of this appeal is timeliness, Your Honors, and this is a unique case where the same set of facts that show that Mr. Salas filed this Rule 60B motion within a reasonable time are the set of facts that go to their extraordinary circumstances here that justify relief. Now, you also raise a concern about the trial counsel in the original proceeding not communicating effectively with his client, and there's, I guess, a contention that he didn't properly advise him of his appeal rights, including the right to file a petition for sorority. But, of course, that wasn't part of the allegation in the habeas petition in IAC, with respect to an ineffective assistance of counsel. So why should we factor that into this analysis? Your Honor, I agree that that was not in his original habeas petition. He did attempt to raise it later, and that was held to be a successive habeas petition, which we do not dispute that fact. But it's the same set of facts can form a basis of an ineffective assistance of counsel claim, but also go to the extraordinary circumstances involved. But why should that if there was a procedural vehicle in the first place to address it and he didn't avail himself of it? I mean, I don't see how that makes it extraordinary. I don't think that standing alone makes it extraordinary, Your Honor, and that's not our point in this case. We are raising it as one of the many facts in this case that go to the extraordinary circumstances. I mean, in this case, the law changed in two meaningful ways that directly affected Mr. Salas, neither of which he's gotten the benefit of. I mean, the Supreme Court decided Apprendi while his lawyer was ignoring him on direct appeal. And the Supreme Court then decided Clay during Mr. Salas' habeas appeal, overturning the only basis on which the district court had relied in denying his habeas claim. And then as we discussed, Your Honor, the district court then improperly dismissed Mr. Salas' effort to raise this error. Your Honor, the whole purpose of Rule 60B-6, as courts have recognized, is to provide a safety valve to prevent injustice. And providing relief in a case like this where all of these circumstances are happening in one case to one man are exactly the type of case that Rule 60B-6 was designed to provide relief. If we denied your request, could he file again and make the same argument again? Yes, he could, Your Honor, but I don't think he would have success on that claim, no. I think right now the extraordinary circumstances and the timeliness of this motion are directly before this court. So I think this court will be binding on this issue. Thank you. Your Honors, unless you have any further questions, I would reserve the rest of my time for rebuttal. Thank you very much. Good morning, Your Honors. May it please the Court. The defendant seeks to raise a claim arising from a trial that took place over 20 years ago. And in support of that claim, he cites three intervening Supreme Court decisions. Apprendi, on which his claim is based, Clay, which changed the law of when a conviction becomes final, and Gonzales, which altered the way that courts review Rule 60B motions. But there has been no change in law and no change in the underlying facts since 2005. And against that backdrop, this claim fails for three independent reasons. First, granting the Rule 60B motion in this context would contravene various canons of finality. Second, the defendant cannot show that he satisfies the requirements under Rule 60B as to timeliness or extraordinary circumstances. And third, whether viewed through the framework of harmlessness on collateral review or cause and prejudice or even plain error review, this claim is utterly without merit. I'd like to start with the finality point, and I can think of no better place to begin than with your question a moment ago, Judge Quattlebaum, which was, if we were to reject the claim now, could he refile again in the district court? I think the correct answer to that question is no, because what would happen if he filed again in the district court is we would argue that under the mandate rule, granting relief would contravene the order of this court denying relief on appeal. And here is, I think, where the critical difference between my friend on the other side and the government lies. In a normal Rule 60B motion that seeks to correct a district court judgment because the law has changed, the law has changed after the appeal process has been exhausted, and that makes great good sense. You might want to give a safety valve in those circumstances for litigants to come in and say the law has changed, so the district court's first judgment wasn't valid. But here, and Judge Diaz, you made this point a moment ago, at every moment where the law changed, the defendant was savvy enough and aggressive enough about pursuing his apprentice claim that he got it before this court with the new law in place. That was true the first time he appealed from the denial of habeas relief, because his argument at the district court was my conviction was not final. The district court said, well, it was final under the Fourth Circuit's precedent in Torres. He gets to this court, and in his informal opening brief, he says Torres is wrong. It's just an incorrect precedent. Then the Supreme Court decides Clay, and he files a petition for rehearing en banc where he says my entire appeal of the apprendi claim was based on Torres being wrong, a position that has now been vindicated by the Supreme Court. And yet this court still denied relief, saying that he had failed to show a substantial violation of his constitutional rights. The only way to grant relief in that context is to say that this court erred, even though it had all of the facts and all of the law in front of it. And I would submit to your honors that's a frontal assault on the principle of horizontal comedy among panels. If that's correct, then any defendant could always file a Rule 60B motion in which his argument is just the Fourth Circuit previously rejected my claim, but it was wrong. Go ahead. Well, I understand the procedural aspect of this and what you just said about finality among panels. But just for the sake of discussion, put that aside. What would have been the basis substantively not to consider his opinion or his position in September 2003 when he does frame the Clay issue at that point on a substantive basis? Is there an explanation for our earlier panel's decision that you can articulate? Here's my best stat at that, your honor. I do not think it is a fair explanation to say that the court didn't read his petition for rehearing on Bach and was unaware that Clay had happened. Because this court remanded, and we explained this in footnote 13 of our brief, several cases after Clay was decided, essentially because it must have reasoned that the change in law worked to finality by Clay might have changed the merits resolution of the case. If that's true, then I think the explanation is the explanation that we offer in our brief, which is the court must have taken a look at the merits of this claim. And it's a short trial transcript. It's 300 pages. It's two days. And the first two witnesses put almost 18 kilograms of heroin on this defendant. So I think the explanation that coheres best with the overall circumstances in 2003 was that while the court thought that Clay might have affected the resolution of some claims, it didn't think that it would affect the resolution of this claim. What if the opinion, rather than being as cursory as it was, actually outlined the petitioner's claims but made no mention of the principal one that he's arguing before us today and affirms? Then what? The normal rule, and this court said this in dais, is that if a litigant believes that a panel has erred outright, the mechanism for review is a petition for rehearing or a cert petition to the Supreme Court. So that's the normal rule. Now, that said, Your Honor, I think if the court had grappled with the finality issue and had just gotten Clay wrong, then I think they would have a much stronger argument that you might import some of the exceptions that apply to finality rules, like the law of the case doctrine or even the mandate rule, that make accommodation for obvious error. I think that would be a very aggressive stance. I'm not aware of a precedent that has said that error is an exception to the horizontal panel rule, but you might have an argument. But here you just don't for the reasons that we've talked about a moment ago. It's also worth underscoring we've just been talking about the 2003 resolution, but this claim came back twice more. It came back in the second appeal because what happened is that, as Judge Cordova, you mentioned a moment ago, the defendant filed a Rule 60b motion raising this claim again. He did not appeal for whatever reason. That ought to factor into the timeliness analysis, which we can get to in a moment. He then files a second Rule 60b motion where he, for the first time, couples his apprendi claim to an ineffective assistance claim, which my friend on the other side just conceded was impermissibly second or successive. That's denied. He then files a Rule 59 motion to alter the judgment. That's denied. And then he appeals both the Rule 59 motion and the second Rule 60b motion to this court, and this court denies the certificate of appealability and denies the application to file a second or successive habeas petition. Whatever we have to say about 2003, by the time this case comes back again on the appeal from the denial of the second Rule 60b motion and the Rule 59 motion, all of the facts are here again. There is no change in the law. At this point, Gonzalez is decided, and he raises it in his papers before this court, and the court again denies relief. So even if there was some discomfort Judge Diaz with sort of sussing out what happened in 2003, it just can't exist in 2005. And indeed, the defendant goes a step further and files a motion to recall the mandate on the grounds of the ineffective assist claim with respect to the failure to file a certiorari petition. This court considers that on the merits. It asks the defense counsel to file a response, and then it denies that motion. So there's just no way to grant relief here without this panel sort of saying, our colleagues got it wrong at least three times before, and I'm not aware of any case law that would permit that. Let me move to the merits of the Rule 60b claim briefly. I think this is very straightforward. First, he cannot show that his claim is timely. The first reason is the reason Your Honor mentioned Judge Quattlebaum. He ought to have appealed the denial of his first Rule 60b motion, and we concede in our brief that very well may have been timely. I mean, it happened very shortly after Clay was decided, but he did not. And this court's precedents say that a later Rule 60b motion won't do service for an appeal. The other reason it can't be timely is there are very long gaps in the record here where nothing happened. In the period between the denial of cert in his second post-conviction appeal and his motion to recall the mandate, four years fell off the clock.  Nothing happened for six years before the defendant filed the third Rule 60b motion that gives rise to this appeal. So it's ten years in which nothing occurs. I have not seen a single case anywhere that says ten years is timely for purposes of Rule 60b. This court has said in Wells Fargo Bank two years was too much. It said in Moses 15 months was too much. It said in McLawhorn four months was too much. So there's just no basis in law to say that a ten-year gap is timely. And with respect to extraordinary circumstances, they're bound on both sides. On the one hand, to the extent they argue that the law changed, Gonzalez forecloses that kind of claim based on a pure change in the law. The Supreme Court was very clear about that. To the extent that they say in their reply brief, as I take them to say, that Gonzalez doesn't apply because we were raising our claim before judgment was filed on our first appeal for the denial of habeas relief, then we're right back into the conversation we were having a moment ago about how then their argument for extraordinary circumstances is just a free-floating claim that this court erred not once but three times. And again, I am not familiar with any case that says the court of appeals got it wrong is an argument sufficient to constitute an extraordinary circumstance. I want to move to the third point, which is whether this aim has any merit at all. Before you do that, you made an argument about the notion that the claim had also been procedurally defaulted along the lines. But haven't you waived that procedural default by not raising it at the first opportunity? No, Your Honor, for three reasons. And I appreciate that the court has given me an opportunity to respond because I was raised for the first time in reply. This court's key precedent on waiver of waiver, which is the kind of argument they're making, is Metzer, which is a 1993 opinion. So here's my first response to the court's question. The government's error in Metzer was that it had a procedural defense. I think in that case it was an appellate waiver. And on appeal to this court, rather than invoke the appellate waiver, in its standard of review section, the government said, we agree with the defendant that the standard of review in this case is de novo.  because it had blown through procedural issues and gone straight to the merits. We didn't do that here. The government's opposition to the habeas petition from the early 2000s made two arguments. The first argument was that the drug thresholds appearing in Title 21 are sentencing enhancements and not statutory elements, which is not a merits argument. It's an argument about noncognizability, I think. And the second argument it made was, and also Apprendi is not retroactive, which is another procedural argument. So my first response to their point about waiver is, we never blew through the procedural defenses and went to the merits. I think what we're doing now is raising an alternative procedural argument. But procedural default is an affirmative defense. It's not enough to say, well, we didn't raise any merits-based defense. We raised some other procedural defenses. You didn't raise this precise procedural defense. And that brings me to my second response, Your Honor. The second response is Metzger itself has an exception. Metzger says that while normally if the government waives waiver, we will not consider waiver. That rule does not apply in cases implicating interests of judicial efficiency, conservation of scarce judicial resources, and orderly and prompt administration of justice. That's at 3F3rd 758. This case has been here three times already. This is the fourth. I think if any case raised interests relating to efficiency and conservation of resources, this would be it. And this Court has applied that exception in a case called Linder from 2009 where the government had waived waiver, but the Fourth Circuit nonetheless said that it was going to apply waiver because otherwise it would contravene interests in judicial efficiency. And here's my third argument, Judge Diaz. Even if you disagree with those two, we get to the same place, and here's why. We have only found three cases in the entire federal reporter that raised this very odd procedural posture where an apprendi claim is raised after an appeal is resolved, but apprendi comes down after the judgment becomes final in this gap before the conviction itself becomes final because no cert petition was filed. Two of them went off on procedural default, Pettigrew and Derman. But the third was another First Circuit case called Shostash Rivera which went off on Frady harmlessness grounds. And under Frady, they still have to show prejudice to get habeas relief because the court, sort of the bedrock principle of collateral review is that we don't correct errors that are harmless. And harmlessness can be raised for the first time in appeal. It's raised for the first time on appeal all the time. So even if the court were suspicious of the cause and prejudice argument, I think we've sufficiently preserved the harmlessness argument on page 32 of our brief, and it gets you to the exact same place because the court would ask the question, has the defendant met his burden because it's his burden under Frady in collateral review to show that this error was not harmless? And then this is precisely why we ordered the case file from the archives and submitted the trial transcript to the court. The court reads the testimony of the first two witnesses and the error was indeed harmless. Is the aside from whether you have preserved the procedural default argument, is that procedural default issue one of the ways we could consider this court's summary dismissal of the first Rule 60B motion? And we're trying to grapple with, you said the best thing is that the record showed that there was weight and it'd be harmless to do so. It seems to me, I don't know if that's another reason. I mean, we're kind of grasping. I'm just suggesting that, Sanders, maybe there's a variety of ways that they could have been thinking, albeit without a whole lot of explanation. It could, Your Honor. I mean, the fundamental principle here is that in habeas, all roads lead to prejudice. If you view it as a harmlessness analysis, he's got to show prejudice. If you do causal prejudice, he's got to show prejudice. Even if you were to view it as a very late, second, or successive ineffectiveness claim, he's got to show prejudice under Strickland. So I agree with you, Your Honor, that you could. I also make this point, Judge Quattlebaum. The courts decided, including this court and Sanders, very early that Apprendi was not retroactive. And so one of the things that happened is the doctrine grew up around late filed Apprendi claims, recognizing that it was going to be very hard to show an Apprendi error if you hadn't preserved the claim in the district court, as this defendant did not do. And so we make the point in our brief, Judge Quattlebaum, setting aside prejudice, he can't show cause. I mean, this court has said you can't get over the cause threshold by arguing Apprendi was so novel. And then it also said in Dyess that you can't show ineffectiveness on the theory that defense counsel should have anticipated Apprendi. That's the field. I mean, it's very, very difficult, borderline impossible, for a defendant who has not raised an Apprendi claim in the district court to come in later and say somehow someone ought to have raised it earlier. Those avenues have largely been foreclosed. In the final analysis, Your Honors, we think that the Sixth Circuit got this exactly right in its Brooks against Bobby decision from 2011 that we cite in our brief. Whatever Rule 60B allows, it does not allow a litigant to lose in the court of appeals and raise the claim again and again and again, seeking a different result. And in the final analysis, we think that's what this defendant is doing, and that maneuver is simply impermissible. If there are no further questions, we encourage the court to affirm the denial of the third Rule 60B motion. Thank you, Mr. Young. Thank you. Ms. Bennett, you have some time for rebuttal. Thank you, Your Honor. A few points. The first case, the last case that the government referred to as Brooks v. Bobby, and I would encourage the court to read that case. That case was actually deciding— Hold on a second. Mr. Young, are you leaving early? Excuse you, Your Honor. That's the second time I've done that in this courtroom because it's so complicated. I apologize. No, we are going to come down and say hello to you. And I'll afford you the opportunity. Sorry, Ms. Bennett. I'm terrified, Your Honor. I would encourage the court to read Brooks v. Bobby. That case was actually deciding a motion to stay execution in Ohio, and that was decided about five days, six days before the execution was happening. So the question there was do you have a likelihood of success on your Rule 60B motion, and the court listed off five reasons to maybe say it was this law of the case was one of them. I would also note that the case that they relied upon for that statement does not actually support their argument that law of the case applies in the Rule 60B context. But getting to the other points made by the government, Your Honors, they said multiple times that the court erred not once but three times, and we are trying to ask you to find that this court erred three times. That is not our argument. In 2005, the question was whether there was a successive habeas petition. We conceded that that motion was a successive habeas petition, so the panel was right in that instance. That was 2005. In 2010, the question was on a motion to recall a mandate, and this court has held that you only recall your mandate in extraordinary circumstances. So we do not argue that that decision was wrong. What we're focused on is the appeal of the habeas judgment itself, and as Your Honor said, it was a cursory opinion, so we do not really have insight into what the court was thinking. The government says back, the court must have taken a look at the underlying claim to figure out their reasons, but I would note that that case, Mr. Salas was pro se. He filed an informal brief that the government didn't respond to, so arguably the record was not even at this court for the court to be able to look at the underlying claim and some other reasons to deny the habeas, excuse me, to deny the Apprendi claim in that case. So that case was entirely different. And as the government mentioned, the law of the case, different canons of finality involved, the law of the case specifically makes an exception for, quote, prior decisions clearly erroneous that would work a manifest injustice. And I think if you look at that opinion from 2003, the only basis for which the district court decided Apprendi was overturned. So I think that case was clearly erroneous and is now working a manifest injustice on Mr. Salas. Lastly, the government speaks to canons of finality, but the Supreme Court recognized in Gonzales that the whole purpose of Rule 60B is to provide an exception to finality. So, Your Honors, we would ask that this court reverse the district court below. Ms. Bennett, just one final question. Well, I won't speak for my colleagues, but I want to end where I began, and that is this question of prejudice. And my understanding of your argument with respect to prejudice being that the witnesses who testified at this trial simply were not credible with respect not only to the scope of the conspiracy, but the drug weights. Is that your point? Your Honor, my time is up. May I? Yeah. That is part of our point, yes, Your Honor. I think if you look at other cases that have held overwhelming evidence, they had physical evidence. If they had biased co-conspirators, they had multiple conspirators corroborating this testimony, which you do not have here. The two other witnesses the government cites after that first witness they keep looking at didn't even know Mr. Salas. I think the other point on that, Your Honor, is... Well, I mean, but the jury made a finding, right, with respect to guilt. So then the question is what does the record show about drug weight, which really was the only issue that the trial judge was focused on. So what about that? It's interesting you say only issue, because in the government's opening statement at Mr. Salas' trial, they said that the only issue was guilt or innocence. This case is also different from some of the cases cited by the government. Pettigrew, Cotton, Promise, Derman, all of those cases, there was an information or an indictment at some point that listed the drug weight. So it gave notice that drug weight was central to those opinions and those trials. That did not happen here. Mr. Salas' indictment in this case only said a detectable amount of heroin. And then you got to trial, and the government said the only issue in this appeal is guilt or innocence. So Mr. Salas was not on notice that drug weight was an issue that would put him in jail for the rest of his life. So I think the lack of notice to Mr. Salas, combined with the fact that you have no physical evidence directly attributable, like you do in Pettigrew, like they did in Cotton, and also the fact that you're really principally relying on a biased co-conspirator, combines to show that the evidence in this case is not overwhelming. But, Your Honor, I would go back to the point that this is not the question that should be before this Court. In the Rule 60B context, he only needs to show a potentially meritorious claim. And this Court has held that if there are doubts of that, it should be resolved in favor of the move-in. Thank you, Ms. Bennett. Thank you. Ms. Bennett, I see from my docket sheet here that you were court-appointed in your law firm. Both you and Mr. Young have done a really commendable job of representing your clients' interests, and you in particular I want to thank because without your help we could not do the important work that we do in making sure that these cases are fairly and fully resolved. So thank you very much for taking on this assignment. We'll come down and recounsel and move on to our next case.
judges: Albert Diaz, A. Marvin Quattlebaum Jr., Max O. Cogburn Jr.